| 40 | 391 |
| 96 | 259 |

S. W. BELCHER *et al.*, plaintiffs in error, *vs.* D. F. WILLCOX, assignee, defendant in error.

1. When the charter of a bank makes each stockholder individually liable for the redemption of the bills of the bank in the proportion which his stock bears to the whole capital stock of the bank, or to the whole indebtedness of the bank, a stockholder who has redeemed, by purchase or otherwise, an amount of the bills of the bank, as large as his personal liability, is no longer liable, and when sued as a stockholder, he may plead that fact, and tender the bills in Court as a complete defense. If the amount of bills redeemed by him are less than the whole amount of his liability, they are good as a defense *pro tanto.*

2. When a distribution of the assets of an insolvent bank is made in a Court of Equity, and some of the bill-holders have paid *par* for their bills, and others have bought them up at a heavy discount, each will

receive his part of the whole amount of the assets upon his bills, in proportion to the amount he paid for them.   As the Code provides that a debtor to the bank making payment to the Receiver in such case, shall not pay the debt in the bills of the bank at a larger sum than he gave for them, if he bought them for-less than par value, a bill-holder in the distribution of the fund will be held to the same equitable and just rule.   And he must be a *bona fide* holder of the bills, and must state or show, as accurately as possible, the time when they were purchased, from whom they were purchased, and the amount paid, and in what paid ; and each claimant has the right to contest the show-ing made by every other one as to the *quantum* of consideration paid for the bills.

3. When the bank is insolvent, distribution is to be made in the same order as prescribed in case of administration, to the extent applicable, except when special preference or postponement is given by law.   In case of administration, creditors failing to give notice of their claims within the time specified after the publication of notice by the admin-istrator, lose no right to share equally in the distribution of the fund with other claims of like dignity, if they have brought their claims to the notice of the administrator, before distribution is made.   They only lose the right to equal participation when the fund is distributed after the time fixed by the notice, and before they give notice of their claims, and the right to hold the administrator personally liable in such case.   Apply this rule to the distribution of the assets of the in-solvent bank in the hands of the Receiver, and he is bound to dis-tribute the fund to all creditors of equal dignity in proportion to the amount of their respective claims.   If notice is not given by any such creditor within six months after the publication of the notice required by law to be given by the Receiver, and the fund is distributed by the Receiver before he has notice of other claims, he is not personally liable, and the creditors to whom payment was made, are not liable to refund or contribute to those who did not give the notice within the six months.   But he is bound to make the distribution among all the creditors whose claims are of equal dignity, in proportion to the amount due each, *provided* they give notice of their claims before the distribution is made.                                                 \

4. In such distribution special preference is given by law to bill-holders over other creditors of the bank, and the distribution is to be made among all bill-holders whose bills have been brought in before distri-bution made, in proportion to the amount of the just claim of each.

5. The stockholders of the Bank of Columbus are declared by the char-ter to be personally, individually and severally bound for the payment of the bills of the bank, without suit against the bank, to the creditors holding bills unpaid, in the proportion that the stock subscribed for by each bears to the whole stock of said bank.

Under this provision of the charter the stockholders are sureties for the payment of the bills of the bank liable to be sued separately, but they

are not partners with the bank, and the law governing in case of partnership is not applicable.

6. Stockholders, who are bill-holders, share in the distribution of the fund as other billholders. But if the amount of the bills redeemed or owned by them, is reduced in this way below the amount of their liability they can only set up the amount of their bills remaining unpaid as a defense to suits brought against them on their personal liability, and if they have not bills enough to meet their whole liability, they are liable for the deficiency.

Assignment by Bank. Priorities of creditors. Before Judge JOHNSON. Muscogee Superior Court. May Term, 1869.

In 1868, Willcox, as assignee of the Bank of Columbus, filed a bill for direction, etc., against S. W. Belcher *et al.*, the creditors of said bank. He averred as follows: On the 31st of March, 1866, the bank assigned to him all its property and effects, with instructions to convert the same into cash, pay the expenses of doing this, and his reasonable charges, and then to "pay and discharge the debts" of the bank "in accordance with the priorities established by law in cases where bank charters are surrendered or forfeited," and he accepted the trust. On the next day he gave notice for creditors to present their demands, notifying bill-holders that their priority of payment would cease unless the bills were presented within six months. Within the six months bill-holders, who were not stockholders of the bank, presented bills amounting to $186,951 50, and bill-holders who were stockholders presented bills amounting to $228,278 00. Informal notice of $8,253 00 in other bills was given within the six months by persons not stockholders; $683 00 in bills was presented after the six months, and $57,520 00 of other bills are known to be outstanding, but have not been presented. There are depositors who deposited Confederate currency, and took certificates payable in that currency. There are two judgments against him as assignee. The assets are insufficient to pay all of said demands. The difficulties presented are these: The bill-holders who are not stockholders, and who presented their bills within the six months, claim

that they should have priority in exclusion of all others to the full amount of their bills; the stockholders who presented their bills within the six months resist this, and say they and said other bill-holders, who presented their bills within six months, should be so paid to the exclusion of all other bill-holders and creditors; the bill-holders who did not present their bills within the six months resist that, and assert that all the bill-holders, without reference to the time of presenting the bills, shall take the assets to the exclusion of the stockholders and other creditors. Again, the bill-holders who are not stockholders, say that he should at least pay them now such a dividend as they are entitled to, counting them as having no priority over any creditor; the depositors demand present currency on their certificates, but the Receiver thinks they should be *razeed* according to the Scaling Ordinance of 1865.

Pending the bill, orders were granted, requiring the assignee to pay twelve and a half per cent. to each bill-holder who presented his bills within the six months, and ordering the realty, etc., of the bank to be reduced to cash. These orders were complied with, and a report was made, as required by the Court. None of the creditors denied any material part of the bill. Dr. Billing claimed for a deposit made before the war, for which he had sued and obtained a judgment at May Term, 1866, of said Court, and contended that as the bill-holders could hold the stockholders liable they should give way to his judgment. William Dougherty set up that stockholders of the bank, who were its directors, had bought up its bills since said assignment at a nominal value, and contended that if they shared with the other bill-holders at all, they should take according to what they paid for the bills, and not according to the face of the bills.

There being no issue of fact, the statements in the bill and the answers being taken as true, the parties agreed that the Chancellor should determine the matter without a jury, and decree accordingly. He decreed that $12,963 27 be first paid on account of the expenses of administering said assets, and that the assignee should pay out the balance of the fund

Belcher *vs.* Wilcox.

$147,479 37, to the bill-holders then before the Court, and to Dr. Billing, *pro rata,* in the proportion that the whole demands allowed ($579,016 37) bears to said fund; that the bills of the directors be withdrawn, and that the assignee note his payments on the bills, and report to the next term of the Court.

Error is assigned because stockholders holding bills were allowed to come in on equality with other bill-holders; because all bill-holders were put on equality without regard to the time when they presented their bills; because Billing is allowed to share equally with the bill-holders.

W. DOUGHERTY, SMITH & ALEXANDER, MOSES & GERRARD, for plaintiffs in error, said the stockholders, to the extent of their personal liability, stood in the position of partners, and should give way for the outside creditors: Irw. Code, sec. 1932; 8 Cow. R., 387, 392; 17 N. Y. R., 462; 46 N. H. R., 374; 2 Wallace's R., 10; 24 Barb. R., 87; 2 Wend. R., 327; 2 Hill R., 265; 3 Hill R., 188; Ang & A. on Corporations, 17th sec., 591, *et seq;* 10 N. Y. R., 449; 1 Comstock R., 47; 3 Conn. R., 52; 26 Barb., 207; 2 Denio R., 123; 10 Metcalf, 569, 574–5; 6 Rh. Island R., 154; 32 N. H. R., 388, 405; 26 Maine R., 191–6–7; 40 Pa. St. R., 117, 122–3; 21 Peck R., 455; 2 Story's R., 447; 17 Ohio R., 95; 5 Conn. R., 28; 17 Mass. R., 334. They do not become creditors by discharging their liability: 19 Mo. R., 327; 43 Mo. R., 47; 24 Md. R., 527. Bill-holders who gave notice within six months, take before all others under this assignment: Section 1493, p. 3, Irw. Code; Acts 1842, pamph., p. 30. The preference by assignment was good: Irw. Code, secs. 1493, 1495, 1499; 37th Ga. R., 611, 614; and no benefit thereby can accrue to its stockholders: Irwin's Code, secs. 1492–3; 38th Ga. R., 245; Acts of 1866; Billings judgment gave him no lien.

H. L. BENNING, PEABODY & BRANNON, L. T. DOWNING, for defendant, said that because there was here no forfeiture or surrender of a charter, the above reasoning was not appli-

Belcher *vs.* Wilcox.

cable: Irw. Code, secs. 1496–7–8; 37th Ga. R., 617. The stockholders holding bills are on footing of other bill-holders in like condition: 8th Ga. R., 468; Irw. Code, secs. 2120, 2150, 2151; 4 Ga. R., 343; 5th Ga. R., 274. The price paid for the bills is not material: 26th Ga. R., 27. All might buy but officers and agents of the bank: Irw. Code, sec. 4363. The assignment was a virtual surrender: 17th N. Y. R., 96–7; 19 John. R., 456; 8 Cow. R., 387; 24 Wend. R., 473. The rights of the first takers of the bills followed them into all hands: 20 Ga. R., 295; 26 Ga. R., 17, 27; 18 Ga. R., 65, 419–20; 8 Cow. R., 387; 17 N. Y. R., 463; 18 Ib., 227. Am. L. R., No. 1870, p. 287. The charter is a contract: 19 Ga. R., 325. The stockholder's personal liability makes him a surety: Acts, 1855–6, pamph., p. 99; this liability is several: 18th Ga. R., 420; 19th Ga. R., 328. If stockholder takes up enough bills to cover his liability, he is a creditor of the bank, etc.: 20 Ga. R., 295; 8 Cow. R., 387; 17 N. Y. R., 463; 18 N. Y. R., 227.

BROWN, C. J.

1. We are fully agreed that a stockholder of a bank, whose charter makes him liable for the payment of the bills of the bank, in the proportion which his stock bears to the whole capital stock of the bank, or to the whole indebtedness of the bank, who has redeemed by purchase, or in any other legal way, an amount in the bills of the bank as large as the amount of his liability, is fully discharged from all further liability, and may plead that fact, accompanied by a tender of the bills, in bar of any suit brought against him on his personal liability to pay or redeem the bills of the bank. We understand this to be the settled rule in this Court, admitted by the counsel on both sides, in this case, to be law. See 16 *Georgia*, 217; 18 *Georgia*, 109. And why not? If each stockholder will redeem a like proportion, the whole liability is at once extinguished. At any rate, it is extinguished as to each, when he redeems *his* proportion.

2. When the assets of an insolvent bank are to be collected and distributed by a Receiver, section 1496 of the

Code provides, that debtors are not, in such case, allowed to pay their debts to the Receiver, in bills of the bank at *par* value, unless accompanied by an affidavit that they are the identical bills received from the bank, by which the debt was created.   Now it is admitted that this Bank is insolvent, and the question is, how the assets shall be divided among the creditors.   This Court in *Collins vs. the Central Bank et. al.*, 1 *Georgia*, 461, lays down the rule distinctly and broadly, that in the distribution of the assets of an insolvent bank, each bank bill should take in proportion to the *quantum of consideration paid therefor* by the holder, or claimant on the fund, and not that each bill should take in proportion to the value received by the bank for it, at the time of its emission by the bank, and that each holder or claimant should state the *quantum* actually paid therefor, on oath, in writing, etc. This rule, when the distibution is to be made in Chancery, seems to us to be sustained by reason as well as authority, and to rest upon the most solid and substantial equities.   The Receiver has a claim against a debtor to the bank.   The statute says he shall not be permitted to buy up the depreciated bills of the bank, at a heavy discount, and be allowed *par* value for them in his settlement with the bank, unless they are the identical bills received from the bank, by which the debt was created.   If this is a sound rule, upon what reason can the bill-holder, who claims the fund when collected, be permitted to demand *par* value for bills which he purchased at ten cents in the dollar?   A planter or farmer gave one hundred bushels of corn for $100 00 of the bills of the Bank of Columbus, before the war, when they were worth *par* in the market, and circulated as currency.   He has kept them ever since, and now lays them before the Receiver to claim his part of the assets of the bank for distribution.   A broker since the war has purchased $100 00 of the bills for ten cents in the dollar, and brings them in to claim his part of the assets.   What principle of equity or justice would say that he should share equally in the distribution with the creditor who paid one hundred cents in the dollar, and has lost the use of his money for several years

longer than the creditor who gave but ten cents in the dollar for his?

In analogy, the rule fixed by the statute, to govern in the payment of debts due to the bank, and upon the authority of the case of *Collins vs. the Central Bank,* we are very clear that each bill-holder takes his proportion of the whole assets of the bank only in proportion of the *quantum* of consideration paid by him for the bills, and that each should be required to state, on oath, in writing, that he is a *bona fide* holder of the bills, and to state as nearly as possible the amount he paid for them, and when, and to whom, and in what, it was paid; and that every other claimant should have the right to contest the statement made by each as to the *quantum,* or true value of the consideration paid by him for the bills. In this position also I understand the whole Court to agree.

Section 1495 of the Code provides in case of an insolvent bank, that the order of paying off the debts shall be the same as is prescribed in case of administration, to the extent applicable, except where special preference or postponement is given by law. Now it must be remembered that creditors who fail to give notice of their claims, within the time allowed after the notice published by the administrator, do not lose their equal participation in the funds of the estate with other claims of equal dignity, if their claims are brought to the notice of the administrator, before the distribution is made. They only lose their right to hold the administrator personally liable, if he has paid out the fund after the time expired, and before he had notice of their claims. But they may still be paid after the distribution, if there are assets in the hands of the administrator, and there are no claims of *higher dignity* unpaid. So in this case, if the Receiver goes on and distributes the fund, after the six months publication of notice, without knowledge of the claims of bill-holders, who have not presented their bills, he is not personally liable, nor will the more vigilant bill-holders, who have received the money on distribution, be held liable to refund, or to contribute to those who did not give notice of their claims within the six months.

For these reasons I understand the majority of the Court to hold, that bill-holders who presented their bills after the end of the six months, but before the distribution was made, share *pro rata* with the other bill-holders who presented theirs within the six months.   The object of the Legislature in this case, as in the case of administration, was to fix a time when the Receiver might safely proceed to distribute the fund without personal liability, and not to cut off creditors of equal dignity, and with equal equities, whose claims were presented before the distribution was made.

4. But it must be borne in mind, that section 1495 excepts cases from the general rule applicable to administration, where special preference is given by law.   And by section 1493, construed in connection with the former legislation on this subject, and in the light of the former decisions of this Court, we all hold that special preference is given by law to bill-holders over all other creditors of the bank.   See 18 *Georgia*, 66.

5. The stockholders of the Bank of Columbus are by the charter declared to be personally, individually, and severally bound for the payment of the bills of the bank, without suit against the bank, to creditors holding bills unpaid, in the proportion that the stock subscribed for by them, bears to the whole stock of the bank.   It was contended in the argument, that the stockholders, under this provision of the charter, are copartners with the bank, and that, as such, they are to be postponed till all other creditors of the partnership are paid. I do not so understand the law.   The stockholders are no more nor less than indorsers, or secureties, for the payment of the bills of the bank.   11 *Georgia*, 517.   In this case they are sureties, liable to be sued separately, without first suing the bank.   But they are none the less sureties on that account.   A surety to a joint and several promissory note may be sued separately, and in the first instance, just as the stockholders of the Columbus bank may be under the charter. The corporation is a person in law entirely separate and distinct from the corporators or stockholders, and they, in consideration of the credit given it by the bill-holders, become

sureties for the redemption of the bills. This is the nature and whole extent of the liability. Therefore the law of partnership has no application to this case.

6. But it is insisted that each stockholder is liable to redeem his proportion of the bills in circulation, that when he redeems a bill it is in extinguishment of his liability, and that he can not claim a share in the distribution of the assets, that the redemption of the bill by a stockholder is a payment of the bill, and it can not be used to claim any part in distribution. If this rule be sound, all the bills of this, and probably every other bank in the State, have no doubt long since been redeemed and paid off. For, in that case, no matter when a bill may come to the hands of a stockholder it is paid off and extinguished, and could not be afterwards used as a circulating medium. And probably all the bills of the bank, or most of them at least, have, at some time, passed through the hands of the stockholders, as it is a well known fact that the bills are repeatedly paid into the bank, and paid out again in its daily transactions.

I see no good reason why the bill-holders, who are stockholders, may not present their bills and share equally with other bill-holders in the distribution of the assets of the bank, under the rules above laid down. Indeed, I do not see how we can investigate the question in this proceeding, who are or who are not stockholders. There may be many persons whose names now appear on the books as stockholders, who are not such in fact, and are not liable for the redemption of any part of the bills. To exclude such bill-holders from participation in the distribution of the fund would do great injustice. And it is foreign to the objects of this bill to investigate the question of the individual liability of each person who is charged to be a stockholder, or the extent of his liability.

Again, such a ruling would do great injustice between stockholders themselves. Suppose the assets of the bank to be twenty-five *per cent.* upon the circulation, and that one half of the bills are now in the hands of stockholders, and that the stockholders who are bill-holders are denied any

participation in the assets, and what is the result? The bill-holders, not stockholders, who hold half the entire amount of bills, and among whom the whole fund is distributed, will get fifty *per cent.* upon their bills. What then? The remaining stockholders who had redeemed none of the bills are only liable to redeem that part of their half of the bills which was not paid by the assets of the bank. In other words, they are only liable to redeem half of their original liability, while the stockholder bill-holders have been obliged to redeem all of theirs. Thus by operation of the rule insisted upon, all the assets of the bank are applied to the extinguishment of the liability of half of the stockholders, while the other half are left to redeem their entire liability. This is neither just nor equitable. The true rule, in my opinion, is to distribute the assets among all the bill-holders whose bills are presented to the Receiver before distribution, and leave the bill-holders who are not stockholders to their remedy, against all the stockholders, on their personal liability, for the balance. In this way, the questions of law between them can be fairly adjudicated, and each bill-holder, who appears by the books to be a stockholder, will have a fair chance to defend himself, if he is not, in fact, liable as such.

If by participation in the assets, any bill-holder, should have the amount of bills held by him reduced below the whole amount of his liability, for his proportion of the bills not redeemed by the assets, he will be obliged to make up the deficiency by the purchase or redemption of other bills, or he will be liable for the difference. As this is a proceeding in equity, it is the opinion of the majority of the Court, and it is so adjudged, that the assets of the Bank of Columbus, in the hands of the Receiver, be distributed *pro rata* among all the bill-holders of the bank, whose bills are before the Receiver, at the time he makes the distribution, in proportion to the *quantum* of consideration paid by each, without regard to the fact whether they are stockholders or not, and in preference to all other debts of the bank. As the judgment of the Court below let in a creditor, not a bill-holder, to share-

with bill-holders, and permitted all bill-holders to share according to the face of their bills, we reverse the judgment on these grounds, and send the case back with instruction that the distribution be made in conformity to this ruling.

Judgment reversed.

McCay, J., concurred as follows:

1. An insolvent bank may make an assignment of its assets, and in so doing, it may, since the Act of 1865–6, prefer one creditor to another.

2. As by the Code, section 1493, bill-holders are preferred creditors in the case of a bank, the charter of which has been forfeited, an assignment, providing that the assets shall be distributed, as is provided for in cases of forfeiture of charter, is a preference of bill-holders.

3. Under the Code, bill-holders, whether they have come in within six months or not, and whether they be stockholders or not, are entitled, if they come in before the actual distribution of the assets, in proportion to the consideration they have severally paid for the bills they hold.

Warner, J., dissenting.

On the 31st day of March, 1866, the Bank of Columbus made and executed a deed of assignment of all its property and assets, in trust, for the payment of its debts "according to the *priorities established by law*, in cases where bank charters are surrendered or forfeited," the bank being insolvent. The Act of 1841, providing for the forfeiture of bank charters (the substance of which is incorporated into the Code,) declares "that the issues of such bank or banks shall *first* be paid off and redeemed, and the Receiver shall hold over and retain a sufficient sum to pay off said .issues for a term not exceeding twelve months from the date of their appointment." The time, as it will be seen, is limited by the Code to *six months*. The 1493d section of the Code declares that when a bank charter is forfeited it shall be the duty of the Receiver "to pay the creditors *pro rata*, semi-annually, according to the *dignity* of their claims, unless

Belcher *vs.* Wilcox.

there is sufficient to pay *all* ; to pay the holders of the bills *before other creditors, if they give notice of their claims within six months."* When the charter of an insolvent bank is forfeited or surrendered the bill-holder creditors thereof are entitled to *priority* of payment out of the assets of such bank so forfeited or surrendered, if they give notice of their claims within six months from the date of such surrender or forfeiture, and are entitled to be paid *before the other creditors of such bank.* It was the true intent and meaning of the Bank of Columbus, in making the deed of assignment, that its bill-holder creditors who had given the six months notice should be *first paid,* inasmuch *as their priority of payment is established by law* ; and as the claimants on the fund arising from the assets of the bank claim under the deed of assignment, they are bound to conform to its terms and stipulations, in the distribution of that fund. Inasmuch as the bill-holder creditors of an insolvent bank, the charter of which has been surrendered or forfeited, who have given notice of their claims within six months, are entitled under the law to *priority* of payment before the other creditors of the bank, a *depositor* being a general creditor of the bank is not entitled to share in the distribution of the fund with the bill-holder creditors, he being one of the " other creditors," before whom the bill-holder creditor is entitled to be paid under *the law.* The bill-holder creditor who has given the six months notice being entitled to *priority* of payment under *the law,* the 1495 and 1499th sections of the Code, were not intended to, and do not alter or defeat *that priority of payment,* but on the contrary preserve and protect it, in the latter part of both sections.

The debts of an insolvent bank are to be paid in the order prescribed in cases of administration to the extent applicable, except where special preference or postponement is given by law ; here, *special preference is given by law,* as well as by the deed of assignment, and therefore the general law in cases of *administration* is not applicable to this case.

By the ninth section of the Columbus Bank charter it is declared that, " in case said bank should suspend payment of its bills on demand, or shall *cease to do business*, or said charter should become forfeited, the stockholders in said bank shall be *personally, individually* and *severally bound* for the payment of said bills, *without suit against the bank*, to any creditor holding bills unpaid, in the proportion that his stock subscribed for bears to the whole stock of said bank." The stockholders of said bank who may have redeemed and taken up the bills of the bank, to protect themselves from liability as such stockholders, under the provisions of the ninth section of the bank charter, are *not such billholders* as the law contemplates, who are entitled to be paid out of the fund arising from the assets of the bank, *before other creditors,* unless they are the holders of the bills of the bank to an amount over and above their liability as stockholders. In that event they stand upon the same footing as other bill-holders, as to the *excess of bills* held by them over and above the amount for which they were bound to redeem, as such stockholders, under their contract when they accepted the charter. To allow the stockholders who have taken up the bills of the bank in discharge of their personal liability, to take the larger portion of the fund in Court, as *bill-holders* in that capacity, and then to turn the real *bona fide* bill-holder over to a suit against the stockholders for the deficiency which may be due them on their bills, whether solvent or insolvent, is not within either the reason or spirit of the law which gives to bill-holders special preference in payment thereof. The bill-holders who are entitled to participate in said fund are entitled to be paid therefrom only the value they paid therefor, in good money, at the time they became the holders and *bona fide* owners of said bills, and should be required to show the time when they became such holders and *bona fide* owners thereof.