HASTINGS (UNITED STATES v.). See Case No. 15,323.

HASTINGS BANK (HAWKINS v.). See Case No. 6,244.

HASTINGS NAT. BANK (HAWKINS v.). See Case No. 6,245.

HATCH (BANK OF THE UNITED STATES v.). See Case No. 918.

---

## Case No. 6,203.

### HATCH v. BURROUGHS.

[1 Woods, 439.] [1]

Circuit Court, S. D. Georgia. Nov. Term, 1870.

BANKS—PERSONAL LIABILITY OF STOCKHOLDERS— BILLS ISSUED IN AID OF THE WAR OF REBELLION—BONA FIDE HOLDER FOR VALUE.

1. The stockholders of the Merchants and Planters' Bank of Savannah, whose charter provides "that the persons and property of the stockholders shall be at all times liable, pledged and bound for the redemption of the bills and notes of the bank, at any time issued, in proportion to the number of shares that each individual may hold and possess," are liable as principals to redeem the bills of the bank at their face, after the bills have been presented to the bank and payment refused, although the assignee of the bank has assets in his hands sufficient to pay the bills.

2. Acts of the legislature of Georgia which show upon their face that they were passed in furtherance of the rebellion are void.

3. No matter how illegal or immoral the consideration of a note or bill may be, it is valid in the hands of a bona fide holder for value, unless made absolutely void by statute. Notes, bills, or other securities issued in aid of the rebellion

are valid in the hands of a bona fide holder, for value.

[Cited in Third Nat. Bank v. Harrison, 10 Fed. 247.]

[Cited in Sondheim v. Gilbert, 117 Ind. 77, 18 N. E. 687; Bank v. Portner, 46 Ohio St. 385, 21 N. E. 664.]

4. The act of congress entitled "An act to admit the states of North Carolina, etc., to representation in congress," passed June 25, 1868 [5 Stat. 73], did not attempt to reenact the constitutions of the states, but merely recognized the fact that they had been adopted by the people, and that the states were entitled to representation in congress.

Heard on demurrer to pleas.

Wm. Dougherty and A. W. Stone, for plaintiff.

W. S. Basinger, Wm. Law, J. M. B. Lovell, and Robert Falligant, for defendant.

Before WOODS, Circuit Judge, and ERSKINE, District Judge.

WOODS, Circuit Judge. The declaration alleges in substance that on January 1, 1860, the defendant became a stockholder in the Merchants and Planters' Bank of Savannah, being the owner and holder of 100 shares in the bank, and that he still owns and holds the same. That by an act of the legislature of Georgia, dated February 13, 1854, said bank was incorporated as such. That in and by the act of incorporation it was provided that the persons and property of the stockholders should at all times be liable, pledged and bound for the redemption of the bills and notes at any time issued, in proportion to the number of shares that each individual might hold and possess. That on the times specified in the declaration, the said bank issued and put in circulation the bills or notes commonly called bank bills, which are set out and described, making in the aggregate the sum of fifty thousand dollars. That afterwards the said bank bills came into possession of petitioner for a valuable consideration then and there paid by him, and he is now the owner and holder and bearer thereof. That afterwards, to-wit, on the 8th day of January, 1867, he presented said bills to the president and cashier of said bank for payment, and payment was refused. That on March 15, 1867, he instituted a suit against the bank for the recovery of the money due on said bills in the circuit court of the United States, for the Southern district of Georgia, and on November 25, 1867, recovered judgment against defendant in said court for $50,000, interest and costs, and that afterwards on May 23, 1868, an execution was issued on said judgment and returned nulla bona. That the bank is insolvent, has suspended payment, and is without property out of which said judgment can be made. To this declaration the general issue and eight special pleas were filed. On the 23d day of October, 1869, by leave an amendment was filed to the declaration, to the effect that on December first, 1866, plaintiff purchased the

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

bills mentioned in the declaration, for a valuable consideration, to wit, 15 cents on the dollar, without notice or knowledge that said bills or any of them had been issued, circulated or used in the late rebellion against the United States, or upon any other illegal consideration whatever, or had been used in any illegal manner. To this declaration as amended the defendant has filed special pleas. The plaintiff demurs generally to the second, sixth, eighth and ninth pleas to the original declaration, and to the first eight pleas to the amended declaration.

In considering the questions raised by this demurrer, we shall follow the order adopted by counsel for defendant, and take up first the eighth plea to the amended declaration, which is in substance as follows: Actio non, because defendant says he was but a surety for the redemption of the bills of the said bank, without consideration, and that his risk as such surety was increased and he was exposed to greater liability by the operation of statutes of the state of Georgia, passed after the incorporation of said bank, having reference to all the banks in said state and injuriously affecting the said Merchants & Planters' Bank. It is insisted on the part of the plaintiff that this plea sets up only conclusions of law, and is therefore bad, but we are disposed to take the view of it advanced by counsel for defendant, namely: that the averment of suretyship is merely matter of inducement. If this view be correct, then the plea in substance amounts to this, viz: that by the case made in the declaration the plaintiff shows the defendant to be a surety only, and being such surety, his liabilities and risks have been increased. By this construction of the pleading the demurrer presents these questions: (1) Whether, under the charter of the bank, as set forth in the declaration, the defendant is a surety; and (2) whether, by the statutes of the state of which the court will take judicial notice, the risk and liability of defendant is in fact increased.

After a careful consideration of the charter of the bank, we are unable to reach the conclusion that the stockholders are mere sureties or guarantors; on the contrary, the language seems to import, with great clearness and force, a primary liability. The persons and property of the stockholders are at all times liable, pledged and bound for the redemption of the bills of the bank. The stockholders, in person and property, are liable at all times. At the very moment the bill is issued by the bank this liability arises, and there is no word or phrase to indicate that the liability is conditional or secondary, or that it can in any way be avoided save by the redemption of the bills. In other words, it appears to us that, under this charter, the bank and the stockholders, jointly and severally, undertake to pay the bills. Not that a stockholder will redeem a bill whenever or wherever presented to him, but each stockholder,

jointly with the bank, undertakes that when the bills are presented at the bank, payment thereof shall be made. It is the joint liability of bank and stockholders to redeem on presentation of the bills at the counter of the bank. We do not feel authorized to insert in the sentence which creates this liability, any terms or conditions which the law has not put there.

The liability is principal and absolute, and so we must leave it. That this construction is not new or strange will appear from the adjudicated cases. Angell & Ames on Corporations (section 611) lay down the rule as follows: "When each of the stockholders of a corporation is made personally responsible in his private estate, the stockholders are then subject to the same liabilities they would have been had they been associated for prosecuting the enterprise without a charter of incorporation."

In Harger v. McCullough, 2 Denio, 123, a charter made the stockholders jointly and severally personally liable for the payment of all debts or demands contracted by the corporation. Held, by Brownson, C. J., that the stockholders, in their individual as well as corporate capacity, are principal debtors, although they have been incorporated with many of the privileges usually granted to men associated in that form, yet the privilege of exemption from personal liability for the debts of the company has been denied them, and their personal liability has been expressly declared. They are thus placed in relation to the creditors of the company upon the same footing as though they were an unincorporated association or partnership. In Allen v. Sewall, 2 Wend. 327, it was held that the members of an incorporated company were made by statute individually liable as carriers at common law, and responsible to the same extent and in the same manner as if there was no act of incorporation. The case of Corning v. McCulloch, 1 Comst. [1 N. Y.] 47, was an action brought by a creditor of a corporation to enforce the individual liability of a stockholder. The charter of the company provided that the stockholders should be jointly and severally personally liable for the payment of all debts and demands contracted by the corporation; that the stockholders might be sued therefor, but not until judgment had been obtained thereon against the corporation, and an execution issued and returned unsatisfied. In this case it was held that the personal liability of the stockholders for the payment of the debt of the corporation was immediate and absolute the moment the debt was contracted or incurred by the company.

But we are referred to three cases decided by the supreme court of Georgia, where, it is said, a different construction is put upon the individual liability clause in the bank charters granted by the state. Lane v. Morris, 8 Ga. 476; Carey v. Jones, Id. 516; Belcher v. Willcox, 40 Ga. 391. In reference to the

first two cases named, it is sufficient to say that the language of the charter is not the same in words or substance, with the one under consideration. In those cases the charter provided that the stockholders should be liable for the "ultimate" redemption of the bills of the bank, and while we have great doubt whether the use of the word "ultimate" does in fact change the nature of the liability, yet the omission of the word in the charter before us is significant. We do not find it here and we cannot interpolate it. The case of Belcher v. Willcox, 40 Ga. 399, contains the first judicial construction of a bank charter granted by the state, which is in substance like the charter under consideration. With the profoundest respect for the learning and ability of that court, we are unable to concur in that decision. After a careful review of the case, we are satisfied that this is not an instance in which this court is bound to follow the adjudication of the state court. The charter of the bank forms no part of the local law of the state, the construction of which by the state tribunal we are bound to follow. Although in Georgia all acts are public, yet in fact the charter is a private act, and the rule under discussion does not apply to private acts. Williamson v. Barry, 8 How. [49 U. S.] 495. The rule prescribing how far the United States courts are to be controlled by the decisions of the state courts is laid down by the supreme court in the recent case of Butz v. City of Muscatine, 8 Wall. [75 U. S.] 583. Where the settled decisions in relation to a statute, local in its character, have become rules of property, the United States courts will follow the adjudication of the state courts. The decision in Belcher v. Willcox, supra, stands alone. It is recent; the statute construed is not a local one, and is not and cannot become a rule of property. It is simply a contract, and this court is free to construe it as shall appear just and right. We feel no embarrassment, then, in holding that under the charter of the Merchants and Planters' Bank of Savannah, the stockholders were not sureties, but principal debtors within the limits prescribed for them by the charter. But assuming that the stockholders are sureties for the bank, has their risk been increased, and have they been exposed to greater liability by the operation of the statutes of the state of Georgia, passed after the incorporation of the bank? We are referred to three acts of the legislature, which it is claimed have this effect: the act of November 30, 1860, the act of. November 30, 1861, and of November 29, 1862. As to the two acts last named, it is sufficient to say that they were passed during the late rebellion against the United States; that on their face they clearly show that they were passed in furtherance and support of the rebellion, and that they fall within the rule laid down by the supreme court of the United States in Texas v. White, 7 Wall. [74 U. S.] 733, and

must be regarded as invalid and void. Of right, therefore, they had no binding force upon the bank, and cannot in any way influence the question before us. The act of November 30, 1860, suspended for one year the penalties imposed by law upon the bank for its failure or refusal to redeem its liabilities in gold and silver. Clearly the only purpose of this enactment was to aid the bank and save it from destruction. The act is entitled "An act to grant relief to the banks." It does not compel the suspension of specie payments; it does not in terms authorize it; it merely relieves the bank, in case it is compelled to suspend, from the pains and penalties imposed by law for such suspension. How such an enactment could increase the risk or extend the liability of the stockholders, it is difficult to see. We are of opinion, therefore, that the facts as stated in the declaration do not make the defendant a surety for the bank, and that his risk has not been so increased, or his liability so enlarged, as to discharge him even were he a surety. The demurrer on the eighth plea to the amended declaration must therefore be sustained. The views already expressed settle the question raised by the demurrer on the second and ninth pleas to the original declaration. If the defendant is a principal debtor, then he is liable and bound to redeem the bills of the bank at their face, no matter what the plaintiff paid for them, and the fact that the bank has assets in the hands of its assignees sufficient to pay the bills is no defense to an action against the stockholders, after the bills have been presented at the bank and payment refused. The demurrers to said second and ninth pleas are therefore sustained.

This leaves for consideration the demurrers to the sixth, seventh and eighth pleas to the original declaration, and the first seven pleas to the declaration as amended. These pleas are in substance: (1) That the bank bills were issued directly to the Confederate States and the state of Georgia, for the purpose of carrying on rebellion against the United States, and were so used. (2) That they were issued to the Confederate States and state of Georgia, for bonds of the Confederate States and state of Georgia, which latter were issued in aid of the rebellion. (3) That they were issued during the rebellion, for the purpose of aiding the same. That said banks entered into contracts with the Confederate States and state of Georgia for the loan of money for the purpose well known to all parties to said contract, of aiding the rebellion, and that said bank bills were issued in connection with said illegal contracts of loan, and as the consideration therefor. (6) That said bank bills were issued by the bank in furtherance of and as a consideration for a contract between the bank and the Confederate States, with the purpose on the part of both parties to the contract of aiding the rebellion. (7) The

same plea as the sixth, except that the contract of the bank is alleged to be with the state of Georgia. (8) That bills were issued by the bank to the Confederate States during rebellion, for the purpose of aiding the same, and said purpose was known to both the bank and Confederate States. (9) Same plea as eighth, except that it alleges that the bills were issued to the state of Georgia. (10) Same as eighth, except that it alleges the bills were lent to the Confederate States. (11) Same as eighth, except that it alleges the bills were lent to the state of Georgia.

We entertain no doubt, if the facts named in these pleas be true (and on demurrer they are admitted), that as between the bank and the Confederate States, the bank bills were illegal and void, and that as between the original parties to the issue of their bills, no suit could be maintained upon them. Even when, as in the seventh plea to the original declaration, it is alleged that the bills were issued for the notes and bonds of the Confederate States and state of Georgia, which latter were issued in aid of the rebellion, the bank bills would be illegal and void as between the original parties. This is expressly decided in Craig v. Missouri, 4 Pet. [29 U. S.] 437, where it was held that certificates issued by the state of Missouri, in sums not exceeding ten dollars, received in payment of public dues, were bills of credit, the emission of which was prohibited by the constitution of the United States, and that a promissory note given to the state in exchange for such certificate was void. Mr. Justice Story, in Clark v. Protection Ins. Co. [Case No. 2,832], says: "I adopt the language of Lord Holt and Lord Chief Justice Tindal, that every contract made for or about any matter or thing which is prohibited or made unlawful by statute is a void contract, although the statute does not mention it, but only inflicts a penalty on the offender. In other words, imposing a penalty imports a prohibition, and makes the prohibited act illegal." But the plaintiff says in his declaration, as amended, that he purchased the bills sued on for a valuable consideration, without notice that they had been issued or used in aid of the late rebellion against the United States, or upon any other illegal consideration whatever, or had been used in any illegal manner, and that he is a bona fide holder. This averment of the declaration is not traversed by any of the pleas, so that it stands admitted, and thus the question is presented, Whether the facts alleged in the pleas make the bills invalid in the hands of a purchaser for value without notice?

The well known rule of commercial law is that a bona fide holder for value without notice is entitled to recover upon any negotiable instrument which he has received before it has become due, notwithstanding any defect or infirmity in the title of the person from whom he received it, even although such person may have acquired it by fraud or even by theft or robbery. This doctrine is indispensable to the circulation and security of negotiable instruments, and is founded on the most comprehensive and liberal principles of public policy. Story, Prom. Notes, § 191. It is insisted, however, that these bills, being void because their issue for the purpose set out in the pleas was in effect prohibited by statute, are void in all the hands to which they may come. In other words, that an innocent holder cannot recover when the illegality of the instrument comes from the statute. We thing this claim too broad. The true rule is thus stated: In those cases in which the legislature has declared that the illegality of the contract or consideration shall make the security, whether bill or note, void, the defendant may insist on such illegality, though the plaintiff or some other party between him and the defendants took the bill bona fide and gave a valuable consideration for it. But unless the instrument has been expressly declared void by the legislature, illegality of consideration will be no defense in an action at the suit of a bona fide holder for value without notice of the illegality, unless he obtained the bill after it became due. Brown v. Turner, 7 Term R. 630; Story, Prom. Notes, § 192; 3 Kent, Comm. 79, 80; Gould v. Armstrong, 2 Hall, 266; Cazet v. Field, 9 Gray, 329; Norris v. Langley, 19 N. H. 423; Converse v. Foster, 32 Vt. 828; Meadow v. Bird, 22 Ga. 246; Thorne v. Yontz, 4 Cal. 321; Johnson v. Meeker, 1 Wis. 436. The notes given for a gaming consideration were by the statute of 9 Ann. (chapter 14), declared to be "utterly void, frustrate and of none effect to all interests and purposes whatever." It was under this statute that it was held that gaming note was void in the hands of a bona fide holder for value. Such great inconvenience was the result of this statute and ruling that now by virtue of 5 & 6 Wm. IV. (chapter 41), a bill or note given for a gaming or usurious consideration will be valid in the hands of a bona fide holder for value. The result of the authorities is that no matter how illegal or immoral the consideration of the note or bill, it is valid in the hands of a bona fide holder for value unless made absolutely void by statute. We have been shown no statute declaring bank bills or other notes or securities issued in aid of the rebellion to be void, and we are constrained to hold such instruments valid in the hands of a bona fide holder for value. What has been said applies to negotiable commercial paper. It applies however with much greater force to bank bills which are issued to the community to circulate as money. To hold that an illegal or vicious consideration for the issue of such bills makes them void in all hands would disturb all the channels of business and either put an end to the circulation of bank notes, or leave the public to the mercy of the directors of the banks. The highest dictates of public policy require that

the people who freely receive and pay out bank bills as money should be protected by that wise and salutary rule that cuts off all defenses to the paper when in the hands of a bona fide holder for value. Every man in the community who receives or pays out bank bills is interested in the stability of this rule. If the defense set up by these pleas is good for the stockholders, it would be good for the bank. If the courts should hold that the directors of a bank might issue their thousands and hundreds of thousands of dollars for an illegal or immoral purpose, and then set up such purpose as a defense against the payment of the bills in the hands of the innocent public, they would make themselves the instruments for the accomplishment of the most stupendous frauds, and bring wide spread disaster upon the people. The whole community would be at the mercy of the banks. It is insisted, however, that the bills in suit are made void by the second paragraph of section 17 of the present constitution of the state of Georgia. The plaintiff admits that the bills in suit fall within the purview of that constitutional provision, but says that the section itself is void as impairing the obligation of the contracts. We understand counsel for defendant to admit that the clause in question is open to this objection, but seek to avoid its force, on the theory that the constitution of Georgia is the act of congress, and that congress is not restrained by the provision of the constitution of the United States, which declares no state shall pass any law impairing the obligations of contracts. Without deciding whether congress itself has any power to pass a law impairing the obligations of contracts, we are very clear in this instance congress has not attempted to do so. The act of congress which it is claimed enacts the constitution of Georgia is the act of June 25, 1868. It is entitled "an act to admit the states of North Carolina, Georgia, etc., to representation to congress." The preamble recites that, whereas, the people of said states have, in pursuance of an act for the more efficient government of the rebel states, passed March 2, 1867 [14 Stat. 428], framed constitutions of state government which are republican, and have adopted said constitutions by large majorities, and it is enacted that said states shall be entitled to representation in congress on certain conditions, among which in the case of Georgia is, that certain provisions of the constitution shall be void, and that the general assembly of the state shall, by solemn public act, declare the assent of the state to the said fundamental condition. It seems to us to be a very strained construction of this act to hold that by fixing the terms upon which the state should be admitted to be represented, congress enacted the constitution of the state. By the resolution of March 20, 1821 (3 Stat. 645), the state of Missouri was admitted into the Union upon the fundamental condition that the fourth clause of

the twenty-sixth section of the third article of the constitution, submitted on the part of said state to congress, should never be construed to authorize the passage of any law by which any citizen of either of the states of this Union shall be excluded from any of the privileges and immunities to which such citizens are entitled under the constitution of the United States.

The constitution of Missouri recognized and established slavery. If the position of counsel for defendant is as good as respects the constitution of Georgia, then the constitution of Missouri was the act of congress, and congress established the institution of slavery in that state, which it is admitted on all hands congress had no power to do. In admitting Georgia to representation, congress did not undertake to reenact the constitution of this state; it merely recognized it as having been framed in accordance with law, and adopted by the people. Finally, it is said that plaintiff is not an innocent holder, because he had many reasons to believe the bills of the bank illegal, but the plaintiff says he had no notice or knowledge of the illegality of the bills. and this averment is admitted by the pleas. Plaintiff admits that he bought the bills at 15 cents on the dollar of their face value. But this, it seems to us, is not notice that the bills were illegal. To a prudent man it would only indicate that the bank had suspended and was insolvent. We both concur in the opinion that the liability of the stockholders of the bank was a principal and primary liability; that admitting their liability to be that of a surety, their risk has not been increased or their liability enlarged by any valid legislative acts; that the bills of the bank (if the pleas be true) were invalid and void as between the bank and the state of Georgia or the Confederate States, but valid in the hands of a bona fide holder for value; that on the pleadings as they now stand, the plaintiff must be regarded as a bona fide holder for value, and as a consequence of these rulings the demurrer to these pleas must be sustained.